NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4175
_____

MICHAEL MARCAVAGE,
                    Appellant

v.

BOROUGH OF LANSDOWNE, PENNSYLVANIA;
MICHAEL J. JOZWIAK, BOROUGH CODE OFFICER,
IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 2-09-cv-04569)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
June 7, 2012
_____

Before: SCIRICA, GREENAWAY, JR. and COWEN, *Circuit Judges*.
_____

(Opinion Filed: August 9, 2012)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

This case arises from the United States District Court for the Eastern District of Pennsylvania's grant of summary judgment as to Appellant Michael Marcavage's ("Marcavage") civil rights action under 42 U.S.C. § 1983.  Marcavage brought suit alleging that Lansdowne Ordinance 1188 (hereinafter, "Ordinance 1188") and its successor, Lansdowne Ordinance 1251 (hereinafter, "Ordinance 1251") are unconstitutional both on their face and as-applied to him.  The District Court granted summary judgment in favor of Appellees Borough of Lansdowne and Michael Jozwiak (collectively, "Lansdowne").  For the reasons stated herein, we will affirm the District Court's order.

## I.  BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Marcavage owns two rental properties in Lansdowne, Pennsylvania – one located at 62 East Stewart Avenue and another at 34 East Stratford Avenue.   He rents three of the four units at these two properties.  He resides in one unit on the first floor of the Stewart Avenue property.  Because the property is divided into rental units, Lansdowne required Marcavage to obtain a rental license pursuant to Ordinance 1188.  Lansdowne, Pa., Code § 265-4 ("It shall be unlawful for the owner of any premises . . . to operate, rent or lease any premises or any part thereof . . . without first acquiring one of the below-approved licenses issued by the Code Department . . . .").  To obtain a rental

2

license, the owner of the property must have the property inspected by a Code Enforcement Officer. *Id.* Alternatively, the owner may obtain, "written certification from a Pennsylvania licensed architect or licensed engineer that states that the owner-occupied portion of a rental property complies with all of the provisions of applicable laws." *Id.* at § 265-4(D).[1] To initiate the inspection proceedings, the applicant is responsible for "contact[ing] the Code Department [to] schedule all inspections." *Id.* at § 265-7(A) and (B).

If an individual fails to comply with Ordinance 1188, Lansdowne may issue a notice of violation absent inspection. *Id.* at § 265-5. Despite owning the properties since the adoption of Ordinance 1188, Marcavage neither requested an inspection nor had a licensed engineer or architect approve the property. As a result, Marcavage received annual notices from the Code Department urging him to comply with Ordinance 1188 and obtain an inspection. Marcavage refused on the grounds that the inspection constituted an unreasonable search and seizure in violation of the Fourth Amendment. He continued renting the units in violation of Ordinance 1188. Because Marcavage continued renting the units, Lansdowne could, "in addition to other remedies, institute . . . any appropriate action or proceedings to prevent, restrain, correct or abate such building, or to prevent . . . any act, conduct, business or use constituting such violation." *Id.* at § 265-10(C).

---

[1] This provision was added in Ordinance 1251, which amended Ordinance 1188.

On September 30, 2009, Code Enforcement Officer Jozwiak posted notices on Marcavage's two properties which read:

NOTICE
This Structure has been Declared an
Unlawful Rental Property
For failure to obtain the required rental license.
It is unlawful for Landlord to collect any Rent, Use, or
Occupy This Building After 9/30/09 or until a rental license has been
Obtained from the Borough of Lansdowne.
Any Unauthorized Person Removing This Sign
WILL BE PROSECUTED.

(App. at 50). Marcavage inferred from these notices that he was required to cease occupying the building or face prosecution. He spent the nights of October 1 and 2, 2009 in a hotel and the following two nights at acquaintances' homes. Although he expressed concerns about the inspection requirement on several occasions, he did not appeal the decision. *Id.* at § 265-12 ("The owner, applicant, or agent thereof, may appeal a decision of the Code Enforcement Officer or request a modification of the strict letter of this chapter in accordance to [Lansdowne Code].").

On October 5, 2009, Marcavage filed suit in the United States District Court for the Eastern District of Pennsylvania to enjoin Lansdowne from enforcing the notices. After Lansdowne agreed to take no further action until the resolution of the case, Marcavage returned to his home. On April 21, 2010, Lansdowne amended Ordinance 1188 with Ordinace 1251. The amendment clarified rights and obligations that owners and others occupying the units have with regard to the rental inspection requirement. *Id.* at § 265-10(E).

4

Ordinance 1251 provided that:

> The owner, occupant, tenant or person in charge of any property or rental unit possesses the right to deny entry to any unit or property by a Code Enforcement Officer for purposes of compliance with this chapter. However, nothing in this chapter shall prohibit a Code Enforcement Officer from asking permission from a owner, occupant, tenant or person in charge of property for permission to inspect such property or rental unit for compliance with this chapter and all other applicable laws, regulations and codes, to seek a search warrant based on probable cause or to enter such property or rental unit in the case of emergency circumstances requiring expeditious action.

*Id*.

Marcavage then filed an Amended Complaint seeking: (1) to declare both Ordinances 1188 and 1251 unconstitutional; (2) a permanent injunction under 42 U.S.C. § 1983 prohibiting Lansdowne's enforcement of Ordinance 1251; and (3) damages against the Lansdowne under § 1983 for allegedly seizing Marcavage's residence.[2] Marcavage filed a motion for partial summary judgment arguing that the Ordinances were unconstitutional. Lansdowne cross-moved for summary judgment on the ground that the Ordinances did not infringe upon Marcavage's constitutional rights. The District Court granted summary judgment in favor of the Appellees.[3] Marcavage timely appealed.

---

[2] The District Court reviewed Marcavage's constitutional claims regarding to Ordinance 1188. It concluded that there was no material distinction between ordinances 1188 and 1251 that would alter the constitutional analysis. Because Ordinance 1251 serves as a amendment to Ordinance 1188, we refer to them collectively as "the Ordinance" for the remainder of this analysis.

[3] Because Marcavage sued Jozwiak based on his capacity as a Code Enforcement Officer, we refer to Appellees collectively as "Lansdowne."

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review the District Court's order granting summary judgment de novo. *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). "To that end, we are required to apply the same test the District Court should have utilized initially." *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 181 (3d Cir. 2009) (internal quotation marks and citation omitted).

Summary judgment is appropriate "where the pleadings, depositions, answer to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc) (citing Fed. R. Civ. P. 56(c)).[4] "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216 (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999)). In determining whether summary judgment is warranted "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

---

[4] FED. R. CIV. P. 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

6

favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Further, [w]e may affirm the District Court on any grounds supported by the record." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (internal quotation marks and citation omitted).

### III. ANALYSIS

Marcavage presents four arguments on appeal. First, he asserts that the Ordinance is unconstitutional on its face because it requires citizens to consent to a warrantless search of their residences in violation of the Fourth Amendment. Second, he posits that the Ordinance, on its face, violates the Fourteenth Amendment, because it allows city officials to interfere with a landlord's property interests if that landlord does not consent to a search of the property for the purpose of attaining the required rental license. Third, Marcavage makes an as-applied Fourth Amendment challenge to the Ordinance, arguing that Lansdowne seized his property based on his refusal to consent to the search of his residence. Finally, Marcavage asserts that Lansdowne officials violated his procedural and substantive due process rights by allegedly evicting him from his residence and prohibiting him from renting his property. We will address each issue in turn.[5]

A.) Facial Constitutional Challenges

We characterize Marcavage's first two arguments as facial attacks because they challenge the Ordinance's constitutionality based solely on its text. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988). In order for Marcavage to

---

[5] Because Marcavage waived his argument regarding any property interest in his tenants' residences, we consider only whether the Ordinance infringed upon his privacy interest in his own residence. *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).

prevail on these two claims, he "must establish that no set of circumstances exists under which the [Ordinance] would be valid [under the Constitution]." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, facial attacks are especially difficult to mount. *Id.*

Here, Marcavage posits that the Ordinance's requirement that a city official inspect a rental property before it issues a rental license constitutes an unreasonable search and seizure under the Fourth Amendment. According to Marcavage, the search requirement constitutes a warrantless administrative search similar to that prohibited in *Camara v. Mun. Court of San Francisco*, 387 U.S. 523 (1967). In *Camara*, the Supreme Court considered a Fourth Amendment challenge to two sections of San Francisco's housing code by a property owner that was prosecuted for refusing to allow a city inspector to enter his property. One ordinance allowed authorized employees of the city to enter any building for the purpose of conducting inspections or performing any duty imposed upon him by the municipal code (absent any cause or stated reason for the inspection).

The other ordinance established criminal penalties for any owner who refused to allow a city inspector to enter his property in accordance with San Francisco's municipal code. The Supreme Court held that the ordinances violated the Fourth Amendment because they provided the inspectors with unfettered discretion to intrude on a property owner's rights, unless the owner challenged the warrantless inspection at the risk of criminal sanction. *See Camara*, 387 U.S. at 532-33.

8

As the District Court properly noted, the Lansdowne ordinance poses no such threats to an owner's property rights.[6] To begin with, the Ordinance carries no criminal penalties based on an owner's refusal to allow an inspection. It also does not provide the city employee with unfettered discretion in deciding if and when to conduct an inspection. Contrary to Marcavage's characterization, the property owner holds the power in the process. It is the property owner that decides if he wishes to use the property as rental units. If so, the property owner initiates the scheduling of the inspection in order to obtain a rental license. At all times, the property owner may refuse to consent to a search, at which point, no criminal sanctions attach and no search will take place.[7]

Additionally, if the property owner does not wish to consent to an inspection by a city official, the Ordinance provides him with an opportunity to select a licensed architect or engineer of his choice to conduct the inspection and submit a report to the City. Unlike the San Francisco ordinances, the Ordinance here authorizes an inspection for the specific purpose of obtaining a rental license and requires at least forty-eight hours

[6] Because Marcavage waived his ability to assert a privacy interest in his tenants' residences (by not briefing the issue before the District Court), our analysis pertains solely to his privacy interest in the residence that he occupies. *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).

[7] The only time a penalty attaches to the refusal to consent to a search is if the property owner continues leasing the property after failing to obtain a license. *See* Lansdowne, Pa., Code § 265-14.

9

notice.  This is a stark contrast from the language of the San Francisco ordinances, which authorize searches at any reasonable time for any purpose under the local municipal code.

Marcavage has failed to provide evidence indicating that there is no set of circumstances under which the Ordinance does not offend the Fourth Amendment. Additionally, our review of Supreme Court precedent indicates that the Ordinance would pass constitutional muster based on the fact that it requires a limited search by a city official for the specific purpose of receiving a benefit under the law.  *See, e.g.*, *Wyman v. James*, 400 U.S. 309, 317 (1971).  For these reasons, his facial challenge under the Fourth Amendment fails.

Marcavage has similarly failed to show that a genuine dispute of material fact exists regarding his Fourteenth Amendment facial challenge.  The Fourteenth Amendment prohibits state actors from depriving persons of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, Marcavage essentially reargues his Fourth Amendment claim and suggests that the Ordinance interferes with his property rights by conditioning the unrestricted use and enjoyment of the property upon the waiver of his Fourth Amendment rights.  He grounds this argument in the recognized notion that a state cannot condition a privilege on a person's waiver of constitutional rights.  *United States v. Chicago, M., St. P. & P. R.*

*Co.*, 282 U.S. 311, 328-29 (1931) ("[T]he right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee's submission to a condition prescribed by the state which is hostile to the provisions of the federal Constitution.").

Because we find that the Ordinance, on its face, poses no threat to Marcavage's Fourth Amendment rights, we similarly find no intrusion upon his Fourteenth Amendment rights. Marcavage's ability to reside on the property as the owner is unaffected by the Ordinance. Furthermore, his freedom to use the property as rental units is affected only by a reasonable inspection requirement, not an unconstitutional search under the Fourth Amendment.[8]

B.) As-applied Constitutional Challenges

Marcavage's final two arguments challenge the Ordinance's constitutionality based on its application to him. Thus, we consider whether the specific facts of this case indicate that Lansdowne infringed upon Marcavage's Fourth and Fourteenth Amendment rights.

Marcavage argues that Lansdowne evicted him and his tenants from their homes based on his refusal to consent to a warrantless search when it posted the Notice on his

---

[8] Marcavage's brief also includes a facial procedural due process challenge under the Fourteenth Amendment. Because the text of the statute explicitly provides for an appeals process, this argument must fail as a facial challenge. We will, however, address his procedural due process argument in detail during our later discussion of his as-applied Fourteenth Amendment claim.

properties. The District Court articulated the proper standard for such alleged violations as follows:

> Under the Fourth Amendment, a "seizure" of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty.*, 506 U.S. 61 (1992) (citation and internal quotation marks omitted). "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Id*. at 68. This Fourth Amendment right against unreasonable seizure is "transgressed if the seizure of [a person's] house was undertaken to . . . verify compliance with a housing regulation, effect an eviction by the police, or on a whim, for no reason at all." *Id*. at 69.

*Marcavage v. Borough of Lansdowne, Pa.*, 826 F. Supp. 2d 732, 745 (E.D. Pa. 2011).

On September 30, 2009, Lansdowne posted a Notice on Marcavage's residence stating that the structure had been declared an unlawful rental property and indicating that it would be unlawful for Marcavage to collect rent or allow use or occupancy of the building until he obtained a rental license. According to Marcavage this notice constituted an unreasonable seizure under the Fourth Amendment because "it interfered with his possessory interests in occupying his own home and purported to forbid him from receiving rents from his other properties." (Appellant Br. at 19-20). This argument is unpersuasive.

The notice served as an official statement of Marcavage's failure to comply with the Ordinance as a landlord. At no point did the notice state that Marcavage would be removed from his home, nor did it order him to vacate the premises. Similarly, it made no mention of any judicial order of eviction and did not cite any local code sections referencing eviction. Marcavage states that he interpreted the notice as an eviction and

12

did not immediately return to the property. This erroneous interpretation is insufficient as evidence of an alleged unconstitutional seizure of property.

Finally, Marcavage argues that Lansdowne violated his Fourteenth Amendment rights to procedural and substantive due process by abruptly evicting him from his home and precluding him from collecting rent.[9] As we previously noted, the Fourteenth Amendment requires that all individuals be afforded due process – that is "the opportunity to be heard at a meaningful time and in a meaningful manner" – before the denial of life, liberty or property under the law. *Mathews*, 424 U.S. at 333. When an individual brings suit under 42 U.S.C. § 1983 for a state actor's alleged failure to provide procedural due process, we consider "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotation marks and citation omitted).

Because we hold that Lansdowne did not seize Marcavage's property when it posted the notice, Marcavage was never denied a right as a property owner seeking to

---

[9] In his statement of issues, Marcavage presents a substantive due process challenge under the Fourteenth Amendment. We do not consider this argument in our analysis for two reasons. First, the District Court did not substantively consider the argument because it found it to be waived as not properly presented before the Court. Second, Marcavage similarly stated the issue in his brief to this Court but failed to allege facts to support his claim or otherwise pursue the argument. Accordingly, this argument is waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

inhabit his property. Therefore, we find no deprivation of his property interests as an owner residing on his property. The only arguable issue is whether procedures were available to provide Marcavage with due process regarding Lansdowne's restriction of the use of the property as rental units. We hold that there were.

The text of the Ordinance explicitly provides for an appeal of the decision or the ability to request a modification of the strict letter.[10] Lansdowne, PA., Code § 265-12 (2003). Marcavage concedes this point but nonetheless argues that this appeals process offends due process because it is only available after the resistant owner has been deprived of his property rights. This assertion is inaccurate. Lansdowne sent Marcavage yearly notices regarding his non-compliance, so Marcavage was well aware of the applicability of the Ordinance and its consequences. Additionally, Marcavage's property rights were only affected because he chose not to avail himself of the formal appeals process, not because the process was lacking. This fact, alone, is dispositive of the procedural due process issue. We have previously stated that,

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. [A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to

---

[10] "Strict letter" is a term of art identified in Ordinance 1251. As it applies here, modification of the strict letter refers to a request that the rules be modified (or less strictly enforced) in a particular circumstance as a means of avoiding a finding of non-compliance.

provide due process. If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

*Alvin*, 227 F.3d at 116 (internal quotation marks and citations omitted).

Marcavage's failure to avail himself of the appeals process precludes him from stating a claim under the Fourteenth Amendment. Consequently, his Fourteenth Amendment as-applied challenge also must fail. *See id*.

## IV. <u>CONCLUSION</u>

For the reasons stated above, we will affirm the District Court's order.