RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

HAROLD VONDERHAAR; MICHAEL LEMEN; STINEY INVESTMENTS I, LTD., aka Stiney Investments I, LLC; STINEY INVESTMENTS III, LTD., aka Stiney Investments III, LLC; BLUE PARK PLACE LLC,

> *Plaintiffs-Appellees*,

*v.*

VILLAGE OF EVENDALE, OHIO,

> *Defendant-Appellant*.

No. 18-3173

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:17-cv-00480—Michael R. Barrett, District Judge.

Argued: October 3, 2018

Decided and Filed: October 5, 2018

Before: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Lawrence E. Barbiere, Katherine L. Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio, for Appellant. Brian R. Redden, BUECHNER HAFFER MEYERS & KOENIG, CO., L.P.A., Cincinnati, Ohio, for Appellees. **ON BRIEF:** Lawrence E. Barbiere, Katherine L. Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio, for Appellant. Brian R. Redden, Robert J. Gehring, BUECHNER HAFFER MEYERS & KOENIG, CO., L.P.A., Cincinnati, Ohio, for Appellees.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.   Advisory opinions are "ghosts that slay."  Felix Frankfurter, *A Note on Advisory Opinions*, 37 Harv. L. Rev. 1002, 1008 (1924).  When a party does not have standing to bring a constitutional challenge, he is essentially asking for an advisory opinion about the meaning of the Constitution—a phantom case to invalidate an authentic law.  That is not something Article III's limitation on our power to resolve cases or controversies allows.

Harold Vonderhaar and Michael Lemen seek to enjoin the Village of Evendale from enforcing its property maintenance code because, as they see it, the code permits warrantless searches in violation of the Fourth (and Fourteenth) Amendment.  But the Village has never relied on the code to conduct a warrantless search and believes it permits no such thing.  That leaves the plaintiffs without the risk of an impending injury and, it follows, without standing to raise this claim.  We vacate the court's preliminary injunction and remand the case for further proceedings.

I.

Located near Cincinnati, the Village of Evendale covers fewer than five square miles.  In December 2016, the Village enacted a building code that establishes standards for maintaining private property.  To preserve the public health, for example, owners must protect against vermin infestations and eliminate fire hazards.

The Village enforces the code in several ways.  Property owners who want to rent their properties must obtain a permit.  To do so, an owner must allow the Village's building commissioner to inspect the property or "[s]ign a sworn affirmation" that the property complies with the code.  R. 1-3 at 17.  The building commissioner also may inspect structures if he suspects a violation.  If the building is occupied at the time of inspection, the commissioner must "present credentials to the occupant and request entry."  *Id.* at 24.  For unoccupied structures, the commissioner must "make a reasonable effort to locate the owner" or the person who controls

the property and ask to inspect. *Id.* Should someone refuse entry in either circumstance, the commissioner may use "the remedies provided by law to secure entry." *Id.*

The lead plaintiff in this case, Harold "Stiney" Vonderhaar, worked for the Evendale Police Department for 26 years and served on the Village's council from 2000 until 2013 and served as vice mayor for part of that time. He owns 13 rental properties in Evendale, over half of the rental homes in town. When the Village proposed its new code, Vonderhaar opposed it at a public hearing because he thought it violated the Constitution. But these and other arguments failed to sway his peers.

Vonderhaar turned to the courts and filed this lawsuit under the Fourth Amendment (because the code authorized warrantless searches) and the Fifth Amendment (because the code required permit applicants to attest to a building's compliance). Another property owner named Michael Lemen and their respective investment companies joined as plaintiffs.

The district court granted a preliminary injunction, concluding that the building code's inspection procedures facially violate the Fourth Amendment. At no point, however, did the court consider whether Vonderhaar and Lemen possessed standing to mount a facial Fourth Amendment challenge—an omission no doubt affected by the reality that the Village failed to raise the point. At the same time, the court rejected the claimants' as-applied Fourth Amendment challenge because the Village did not search any of their properties, and the court declined to reach the Fifth Amendment issues because it could not "determine whether [the] Plaintiffs are likely to succeed on the merits" of that claim. R. 32 at 11.

After the district court granted the preliminary injunction, Evendale amended its code. The new version allows owners applying for rental permits to "[p]rovide a written certification" from a licensed architect or engineer attesting that a building meets the Village's standards. R 37-1 at 2. The Village also added an explicit warrant provision. Today, when a building commissioner suspects a violation, the code authorizes him to "seek a search warrant based on probable cause." *Id.* at 3. The Village appeals the district court's preliminary injunction.

II.

Article III standing is to federal courts as a ball is to soccer.  If you have it, you can play.  If you don't, you can just pretend.  Vonderhaar and Lemen can only pretend.  They did not suffer any actual or threatened Fourth Amendment injury and thus have no standing to raise this claim.

Standing stems from the Constitution's mandate that federal courts may decide only "Cases" or "Controversies."  U.S. Const. art. III, § 2, cl. 1.  That limitation serves crucial functions.  Federal judges serve for life, and the U.S. Constitution is difficult to amend, making any constitutional missteps difficult to correct.  The standing imperative humbles our authority, helping to ensure that we do not "usurp the powers of the political branches."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  Standing limitations also prevent those who lose in the political process from running to a sympathetic court for a do-over without any concrete injury to speak of.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006).

Article III standing requires the claimant to establish three things:  (1) a concrete and particularized injury, actual or imminent, (2) traceable to the defendant, and (3) proof that a favorable outcome would redress the harm.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The party that invokes federal jurisdiction must establish its standing at every stage of the litigation.  *Id.*  When litigants present multiple claims, as the parties do here, they must show injury for each claim they press.  *Cuno*, 547 U.S. at 352.

At issue today is the first requirement, an actual or imminent injury.  In recent years, the Supreme Court has tightened the hatches on this requirement.  Claimants cannot file a lawsuit based on a "highly speculative fear" that a law may harm them at some future date.  *Clapper*, 568 U.S. at 410.  Their injury instead must be "certainly impending."  *Id.*  An allegation "of *possible* future injury" is not enough.  *Id.* at 409 (quotation omitted).  The government's actions in related circumstances may nudge a threat of injury from potential to sufficiently imminent.  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345 (2014).

Vonderhaar and Lemen have not suffered an actual injury and do not have a "certainly impending" risk that the Village of Evendale will conduct a warrantless search of one of their properties.  All of the evidence shows that the Village will get a warrant if it wishes to inspect a

home.   Start with the code.   It permits a building commissioner only "to secure entry" to a structure with "the remedies provided by law."  R. 1-3 at 24.  Because the Fourth Amendment prohibits a warrantless search, it is not a "remed[y] provided by law."

The commissioner's sworn account bolsters the Village's promise that it has no plans to violate the Fourth Amendment.  "[W]hat I would do," he attests, "is go to the Village solicitor, [and] say, 'I was refused entry.  Would you please start the process to obtain an administrative search warrant to gain entry?'"  R. 28 at 89.  Nor can this be marginalized as self-serving testimony.   The Village of Evendale has no history of prior illegal searches—against Vonderhaar, Lemen, or any other property owner.  *See Driehaus*, 134 S. Ct. at 2345 ("We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." (quotation omitted)).   Attempting to remove all doubt, the Village amended its code to mention the warrant requirement by name.

All of this explains why the district court found—correctly—that the property owners could not mount an as-applied Fourth Amendment challenge to the building code.   Neither Vonderhaar nor Lemen has suffered an actual injury.  That same lack of harm and the same lack of risk of harm—past, present, or future—also bars them from bringing a facial Fourth Amendment challenge.  *See Platinum Sports Ltd. v. Snyder*, 715 F.3d 615, 618 (6th Cir. 2013); *see also City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2448 (2015) (adjudicating a facial Fourth Amendment challenge where the challengers had suffered a prior illegal search); *cf. Warshak v. United States*, 532 F.3d 521, 526 (6th Cir. 2008) (en banc) (determining that a case was unripe for adjudication where "we [had] no idea whether the government will conduct an *ex parte* search of [a litigant's] e-mail account in the future and plenty of reason to doubt that it will").

The claimants try to counter this conclusion on several grounds.  Each falls short.

Vonderhaar claims standing on the ground that the Village fined him for failing to file his permit applications on time—retaliation (he says) for publicly advocating against the building code and bringing this lawsuit.  True or not, that injury would provide Vonderhaar standing only to allege a violation of his free speech or due process rights, not his Fourth Amendment rights. That the building commissioner has "conducted numerous inspections of properties" likewise

does not provide evidence of a risk of future constitutional harm.  Appellee's Supp. Br. 8.  What matters is whether the commissioner has conducted a warrantless inspection in violation of the Fourth Amendment (he has not) or whether he is likely to do so in the future (he is not).

Vonderhaar and Lemen claim that their tenants fear that they will be victims of a warrantless search.  But, on this record, a tenant's fear of an unconstitutional search is just as speculative as Vonderhaar's and Lemen's fears.  Neither one permits a pre-enforcement action.

Vonderhaar and Lemen invoke a Ninth Circuit case that permitted a Fourth Amendment challenge to a housing ordinance.  *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797–98 (9th Cir. 2001).  But time has passed *Pasco* by.  *See Driehaus*, 134 S. Ct. at 2345; *Clapper*, 568 U.S. at 409–10.

*City of Los Angeles v. Patel* does not save the claim either.  *Patel* invalidated a law that required hotel owners to turn over records to the police without a warrant.  135 S. Ct. at 2448, 2451.  But the hotel owners in *Patel* had "been subjected to mandatory record inspections under the ordinance without consent or a warrant."  *Id.* at 2448.  That by itself distinguishes that case from this one and perhaps explains why *Patel* never addressed Article III standing.

Last of all, the landlords seem to think that their alleged Fifth Amendment injury permits them to bring their Fourth Amendment challenge.  But crossover standing does not exist.  Litigants must possess standing for each individual claim they press.  *See Cuno*, 547 U.S. at 352.  Their Fifth Amendment claim—that they should not have to execute an affidavit to apply for a rental permit—does not establish an injury from a warrantless search.

For these reasons, we vacate the preliminary injunction and remand the case for further proceedings.