RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0020p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES BENJAMIN, as Trustee of the Rebekah C. Benjamin Trust; REBEKAH C. BENJAMIN TRUST,

*Plaintiffs-Appellants*,


JONES FAMILY TRUST; BOBBY JONES, Trustee; SYLVIA JONES, Trustee,

*Intervenors-Appellants*,

    *v.*


JOHN STEMPLE and JANET SANTOS, in their official and individual capacities,

*Defendants-Appellees*.

No. 18-1736

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:18-cv-10849—Thomas L. Ludington, District Judge.

Argued: January 30, 2019

Decided and Filed: February 12, 2019

Before: SUTTON, GRIFFIN, and LARSEN, Circuit Judges.
_____

## COUNSEL

**ARGUED:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellants. Robert A. Jordan, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees. **ON BRIEF:** Philip L. Ellison, OUTSIDE LEGAL COUNSEL PLC, Hemlock, Michigan, for Appellants. Brett Meyer, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Most cities in America regulate vacant properties and the risks to the public health and safety that come with them. Saginaw is no different. Located in eastern Michigan, the city requires owners of vacant property to register their property with the city. The registration form says that owners must permit the city to enter their property if it "becomes dangerous as defined by the City of Saginaw Dangerous Building Ordinance." R. 9-4 at 1. Several owners of vacant property refused to register. Claiming they had no obligation to consent to unconstitutional searches of their property, they filed this lawsuit. Because the registration form and the ordinance, as implemented by the city, ask for something that the Fourth (and Fourteenth) Amendment already allows—a warrantless search of a building found to be dangerous—we affirm.

I.

The Rebekah C. Benjamin Trust owns vacant properties in Saginaw. James Benjamin is its trustee. The Saginaw law, formally known as the Unsupervised Properties Ordinance, requires owners of vacant properties to register with the city clerk. Saginaw, Mich., Code of Ordinances § 151.099(B) (2016). The registration form requires the property owner to "agree that in the event my property becomes dangerous as defined by the City of Saginaw Dangerous Building Ordinance, State Law, or the City of Saginaw Housing Code, I give permission for the City, its agents, employees, or representatives, to enter and board the premises or do whatever necessary to make the property secure and safe." R. 9-4 at 1.

The city fined the trust for breaching the registration requirement. Saginaw, Mich., Code of Ordinances § 151.100(B). Benjamin sued John Stemple, Saginaw's chief inspector, and Janet Santos, the city clerk, on behalf of a potential class of owners of vacant properties for violating the owners' rights under the Fourth Amendment by imposing an unconstitutional condition on registration. Benjamin added a request for a preliminary injunction for good measure. Bobby and Sylvia Jones, whose trust also owns unoccupied property in Saginaw, intervened in the case.

The district court granted the city officials' motion to dismiss the complaint and denied the motion for a preliminary injunction. The property owners appealed each ruling.

II.

What looks like a complex unconstitutional conditions claim is a straightforward Fourth Amendment claim. The property owners refused to sign the registration form on the ground that it requires them to consent to a future search of their unoccupied properties if the city finds them dangerous. In this way, they say, the ordinance imposes an unconstitutional condition on registering their properties. But that argument works, or at least begins to work, only if the required consent surrenders cognizable Fourth Amendment rights.

Think of it this way. What if the city, as a condition of registering unoccupied properties, had asked the owners to consent in the future to submit to a stop and frisk if there were reasonable suspicion they had committed a crime and were armed and dangerous, *see Terry v. Ohio*, 392 U.S. 1, 30 (1968), or submit to an arrest if the frisk established probable cause they had committed a crime, *see Adams v. Williams*, 407 U.S. 143, 148 (1972), or submit to a search incident to their arrest, *see Chimel v. California*, 395 U.S. 752, 763 (1969)? No one would tarry long over an unconstitutional conditions claim in these settings. That's because the consent form asked them to waive rights they do not have, as law enforcement officers may do each of these things with or without consent. In the absence of a constitutional right to resist searches in each of these settings, the consent form becomes a run-of-the-mine exercise of the city's police power.

What matters, then, is whether the property owners have a cognizable Fourth Amendment right to resist warrantless searches premised on a finding that their properties have become dangerous. They do not.

The Fourth Amendment protects the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness is the key, the existence of a warrant often its measure. A warrantless search of a home or business is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). But that rule comes with exceptions. One exception applies when the warrant requirement is impracticable and the "primary purpose" of the search is "[d]istinguishable from the general

interest in crime control." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (quotation omitted). Included in this exception are searches of probationers' homes, *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987), of highly regulated businesses, *New York v. Burger*, 482 U.S. 691, 699–703 (1987), of public employees' work equipment, *City of Ontario v. Quon*, 560 U.S. 746, 760–61 (2010), of students' property by school officials, *New Jersey v. T.L.O.*, 469 U.S. 325, 337–42 (1985), and of the body cavities of prison inmates, *Bell v. Wolfish*, 441 U.S. 520, 558–60 (1979). Also included in this exception are administrative searches designed to assure compliance with building codes, including codes designed to prevent buildings from becoming dangerous to tenants or neighbors. *See Patel*, 135 S. Ct. at 2452 (citing *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)).

Although the administrative-search exception to the warrant requirement exempts law enforcement officers from some procedural hurdles, it does not exempt them from all of them. Before conducting a warrantless search of a building or property on the ground that it has become dangerous, the government must give the owner "an opportunity to obtain precompliance review before a neutral decisionmaker." *Id.* The administrative scheme must give the property owner the chance to challenge a warrantless search request before being sanctioned for refusing entry. *See Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018). Although the Supreme Court "has never attempted to prescribe the exact form an opportunity for precompliance review must take," *Patel*, 135 S. Ct. at 2452, the review scheme at a minimum must give the property owner a meaningful chance to contest an administrative-search request in front of a neutral party before the search occurs, *see Liberty Coins, LLC*, 880 F.3d at 280.

Gauged by these requirements, Saginaw's consent form does not waive any cognizable Fourth Amendment rights. To register unoccupied property, owners must consent to the city entering their property if it "becomes dangerous as defined by the City of Saginaw Dangerous Building Ordinance, State Law, or the City of Saginaw Housing Code." R. 9-4 at 1. Under the ordinance, a building is not dangerous until a formal administrative process establishes that to be the case. The process kicks off when someone reports to the chief inspector that a building is unsafe or damaged. Saginaw, Mich., Code of Ordinances § 151.113. If the inspector initially

finds the building dangerous, he "shall commence proceedings to cause the alteration, repair or rehabilitation, or the demolition and removal of the building." *Id.*

The ordinance clarifies that an inspector's dangerousness finding is preliminary and triggers a hearing on the point. Only after the hearing process may anyone definitively find that "the building or structure is a dangerous building." *Id.* § 151.114(A)(1). The hearing officer must render "a decision either closing the proceedings or determining that the building is a dangerous building." *Id.* § 151.115(H). The city does not deem a building "dangerous as defined by the City of Saginaw Dangerous Building Ordinance" until the officer makes that finding at the end of the hearing. R. 9-4 at 1.

The hearing has many fairness guarantees. After the inspector makes a preliminary determination that a building is dangerous, he issues a notice to the owner of the building with the time and place of the hearing. Saginaw, Mich., Code of Ordinances § 151.114(A)(1). The mayor appoints the hearing officer, who cannot be a city employee. *Id.* § 151.115(A). At the hearing, the officer takes testimony from the inspector and property owner, *id.* § 151.115(D)(1), and each party has the right to call and examine witnesses, introduce physical evidence, conduct cross-examination, and have representation, *id.* § 151.115(E). After the hearing, the officer decides whether the building is dangerous. *Id.* § 151.115(H). If it is, the officer orders the building to be demolished or made safe. *Id.* If the owner fails to appear or to comply with the order, the hearing officer files a report with the Housing Board of Appeals. *Id.* § 151.117(A). The Board sets a date for another hearing at which the owner has "the opportunity to show cause why the order should not be enforced." *Id.* § 151.117(B). If the Board approves the order, the inspector must "take all necessary action to enforce the order." *Id.* § 151.117(C). Even then, the owner has the right to seek judicial review of the Board's decision. *Id.* § 151.118.

All of this satisfies *Patel*'s "minimal requirement" of "precompliance review before a neutral decisionmaker," 135 S. Ct. at 2452, giving the owner all that the Fourth Amendment asks of the city. Because the registration form requires the property owner to allow entrance to his property only after a fair administrative process determines the building is dangerous, it does not require the waiver of any Fourth Amendment rights.

The property owners resist this conclusion on several grounds. They first challenge this construction of the registration form. As they read it, the form allows the city to enter property immediately after the chief inspector initially concludes that the building is dangerous. But the ordinance explains that the inspector's finding that a building is dangerous is a preliminary determination. Until the hearing officer finally decides that "the building is a dangerous building," it is not, and thus no one may enter the property under the form. Saginaw, Mich., Code of Ordinances § 151.115(H).

That can't be, the property owners respond; else the grant of permission would add nothing beyond what is already in the ordinance. Exactly so. Nor is this unusual. There's nothing surprising about a municipality in our litigious age that tries to minimize the risk of a lawsuit—even if it cannot eliminate that risk, *see infra*—by alerting property owners to their legal responsibilities and asking the owners to accept them ahead of time. Even if the form were ambiguous about when a building becomes dangerous by the way, we would interpret it in this manner—to sidestep unconstitutional trespasses rather than to create them. *Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

The owners add that the form might allow city employees to enter their property without any administrative process under a provision of *state* law that empowers fire department officers to determine if a dangerous condition exists on property. *See* Mich. Comp. Laws § 29.7a(1). But that law applies only to "emergency condition[s] dangerous to persons or property," *id.*, and such an emergency would constitute an exigent circumstance justifying warrantless entry even without the form, *see Michigan v. Tyler*, 436 U.S. 499, 509 (1978); *People v. Slaughter*, 803 N.W.2d 171, 181 n.37 (Mich. 2011). That may explain why the owners did not raise this argument until their reply brief in this appeal, which means it is forfeited anyway. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

Even if the registration form permits entry only at the end of the hearing process, the owners claim that the process has constitutional problems of its own. One, they say, is that the ordinance does not require the inspector to obtain a judicial warrant. But administrative searches like this one fall into an "exception to the warrant requirement," *Patel*, 135 S. Ct. at 2452, and Saginaw's adversarial hearing system at any rate provides far more protection to the property and

privacy rights of owners than a one-sided warrant process ever could.  Another problem, they say, is that the ordinance fails to provide neutral criteria to guide the hearing officer's decision making.  But *Patel* says that the Fourth Amendment requires only "precompliance review before a neutral decisionmaker." *Id.*  A third problem, they say, is that the ordinance does not authorize the hearing officer to issue a subpoena or other document to the inspector that explicitly permits him to search the owner's property.  But *Patel* acknowledges that "administrative subpoenas are only one way in which an opportunity for precompliance review can be made available." *Id.* at 2454.  Once the hearing officer determines that a building is dangerous, he issues an order directing the property owner to fix the problem.  Saginaw, Mich., Code of Ordinances § 151.115(H).  If the owner fails to comply, the ordinance directs the inspector to "take all necessary action to enforce the order," and gives the owner a right to appeal. *Id.* §§ 151.117(C), 151.118.  The hearing process and the ordinance together put the property owner on notice that the inspector will enter his property to remediate the dangerous condition, making any additional documentary requirement superfluous.  All in all, the hearing process provides adequate precompliance review for an administrative search.

Because the district court properly dismissed the owners' complaint for failure to state a claim, it follows that it properly rejected the motion for a preliminary injunction.  Failure of the one establishes dim prospects of success for the other. *See McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018).

We affirm.