RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

BRIAN H. HERSCHFUS, individually and as Trustee;
BRIAN H. HERSCHFUS AND FERN SHARI HERSCHFUS
JOINT REVOCABLE TRUST, u/a/d March 22, 1994, as
amended,

                              *Plaintiffs-Appellants*,

    *v.*

CITY OF OAK PARK, MICHIGAN, a municipal
corporation; ERIK TUNGATE, City Manager; ROBERT
BARRETT, Technical and Planning Services Director;
JOHN OR JANE DOE, code official(s), jointly and
severally,

                              *Defendants-Appellees*.

> No. 24-1451

————————————

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-11174—Stephen J. Murphy III, District Judge.

Decided and Filed: August 5, 2025

Before: MOORE, GRIFFIN, and NALBANDIAN, Circuit Judges

————————————

## COUNSEL

**ON BRIEF:** Stuart Sandweiss, METRO DETROIT LITIGATION GROUP, Southfield, Michigan, for Appellants. Christian C. Huffman, GARAN LUCOW MILLER, P.C., Detroit, Michigan, for Appellees.

    NALBANDIAN, J., delivered the opinion of the court in which GRIFFIN, J., concurred. MOORE, J. (pg. 15), delivered a separate opinion concurring in the judgment.

————————————

**OPINION**

————————————

NALBANDIAN, Circuit Judge.   Brian Herschfus, a Michigan landlord, challenges certain housing-code inspection rules, arguing that the city of Oak Park has violated his Fourth Amendment and Equal Protection rights.  The district court granted summary judgment in favor of the city on standing and merits grounds.  We find that Herschfus does have standing to bring his Fourth Amendment claim, but that it doesn't succeed on the merits.  His Equal Protection claim also fails.  So we affirm.

**I.**

Like most local governments, Oak Park has a housing code regulating tenants, landlords, and living standards to ensure "safe, sanitary and habitable condition[s]."  Oak Park, Mich., Code § 18-164.  For one- or two-family rental homes, the city requires landlords biennially to apply for a license and receive a certificate of compliance with the housing-code standards.  *See id.* §§ 18-164, 18-166, 18-181.

As part of the licensing and regulatory regime, Oak Park inspects rental properties from time to time to check that they're up to code.  The city conducts an initial inspection before issuing the certificate of compliance and the license.  *Id.* §§ 18-168, 18-181.  Then, once a tenant moves in, the city reinspects the property periodically, at least every two years.  *Id.* §§ 18-181, 18-182.  The city also reinspects the property upon any vacancy and reoccupancy.  *Id.* § 18-181.

As Oak Park interprets it, the code sets out two stages—initial inspections (necessary for the certificate and license) and subsequent inspections (routine checkups, vacancies, tenant requests, emergencies, and the like).  The city requires landlords to consent to the initial inspection as a condition of receiving a certificate and license.  Under § 18-168, landlords must sign as part of their applications an affidavit "permitting inspections of their property" for the certificate of compliance.

Subsequent inspections are governed by a series of rules.  Generally, the city must obtain a tenant's consent to inspect a home.  *Id.* § 18-182(a)(2).  But the code makes certain exceptions. An inspector need not gain the tenant's consent to access building common areas and areas open to the public; the landlord is expected to make them available.  *Id.* § 18-182(a)(4).  The landlord must also, upon an inspector's request, provide access when the rental unit is vacant, when the lease authorizes inspectors to enter, or when the tenant has complained to the city.  *Id.* § 18-182(a)(5)(a)–(c). But at any time, the landlord or owner can refuse entry and demand that the inspector get an administrative warrant for one of these searches.  *Id.* § 18-183.  The inspector must secure one.  Only then can he then enter.  *Id.*; *see also id.* § 18-182(a)(5)(d).  Finally, in any emergency—when there's a "present threat to public health, safety and welfare," like fire or flood—an inspector can enter a dwelling without consent or a warrant.  *Id.* § 18-183.

Brian Herschfus owns and operates several rental properties in Oak Park through a trust.[1] For years, the city certified his rentals and he operated under a license.  By 2020, though, things changed.  Herschfus's license expired, and he tried to renew it.  But this time, he objected to signing the consent form authorizing any new inspection.  Because he refused to sign it and complete his application, the city never issued him a new certificate of compliance or license.[2] Yet Herschfus kept renting out his properties anyway.

---

[1]For simplicity's sake, we'll refer to Herschfus, not the trust, as the landlord.

In this case, Herschfus has sued in both his individual capacity and his capacity as trustee.  The trust itself is also a plaintiff.  The parties do not raise any issue of the trust's capacity to sue in its own name or raise its own constitutional rights (though Herschfus can certainly sue as the trustee).  Traditionally, a trust wasn't a "distinct legal entity, but a fiduciary relationship between multiple people," and "legal proceedings involving a trust were brought by or against the trustees."  *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) (internal quotation marks omitted).  But the modern trend is apparently to recognize a trust as a legal entity with legal capacity.  *Compare* Restatement (Third) of Trusts § 2, Westlaw (database updated Oct. 2024), *with* 76A Am. Jur. 2d, *Trusts* § 2, Westlaw (databased updated May 2025).

We note that we've had this same situation in the past, and we ruled against the plaintiffs on the merits without distinguishing between the trustee and trust.  *See Benjamin v. Stemple*, 915 F.3d 1066, 1067–69 (6th Cir. 2019) (Michigan trust and trustee suing to challenge landlord-licensing municipal code).  Other courts have found that while a trust can own property and have a reasonable expectation of privacy in it, it is still the trustee who must sue on the trust's behalf.  *See Mathis v. County of Lyon*, No. 2:07-cv-00628, 2014 WL 1413608, at *2, *7 (D. Nev. Apr. 11, 2014).  Either way, Herschfus has sued in his capacity as trustee, so this case can move forward.

[2]Herschfus refused to sign the form as written.  He tried to sign and submit the form while editing the text to negate the consent requirement, which the city didn't accept.

That caused problems. Oak Park cited him repeatedly for renting to tenants without a license in violation of the city code. In late 2020, Herschfus received first-time infraction fines for two properties at Corning Street and Rosewood Street. The tickets cost $195.00 each. Herschfus paid them but kept renting anyway. In early 2021, the city cited him again for second-time infractions—$295.00 each. A few months later, it issued a first-time infraction for a third property at Cloverlawn Street. Despite these fines, Herschfus still kept renting. So in early 2022, Oak Park issued third-time infraction notices for Corning and Rosewood, which carried misdemeanor charges.

The record does not show that the city has gone into any of Herschfus's homes and inspected them without consent or a warrant.[3] When he declined to sign the forms, the city responded by withholding the license and certificate of compliance, not by searching his rentals anyway.[4]

Herschfus sued Oak Park with various constitutional claims, and the district court granted the city's motion for summary judgment. Relevant here, the district court first found that Herschfus lacked standing to raise a Fourth Amendment claim because he'd suffered no injury; the city hadn't conducted any warrantless, nonconsensual inspection. Second, the district court ruled on the merits of what Herschfus called a "Fourteenth Amendment procedural due process claim," but which included, in substance, another Fourth Amendment argument—that Oak Park's licensing and regulatory regime violated constitutional search rules. The court concluded that the housing code neither authorized unconstitutional searches nor imposed unconstitutional

---

[3]An inspector did go to the Corning Street house after Herschfus's license lapsed but only walked around the outside. He cited Herschfus for unsafe exterior conditions, including rotting wood and windows in disrepair. Herschfus believes the inspector violated the Fourth Amendment by trespassing on his yard. We'll take care of this incident up front. Under our precedent, an administrative official conducting a visual exterior inspection of a house for civil enforcement purposes "without touching, entering or looking into the house" does not violate the Fourth Amendment, even when he trespasses. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 581–86 (6th Cir. 2005); *see also Taylor v. Mich. Dep't of Nat. Res.*, 502 F.3d 452, 456–58 (6th Cir. 2007).

[4]Herschfus also claims that after he filed this suit, a city inspector searched inside the Cloverlawn Street house and found several housing-code violations. We'll deal with this one up front, too. The tenant consented to—indeed, asked for—this inspection. *See* App. Dkt. 25, p.7 (inspector testifying that it was done "per the tenant's request"). That consent made the inspection lawful. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Georgia v. Randolph*, 547 U.S. 103, 106, 109 (2006).

conditions on the rental license. And third, the district court determined that Herschfus's Equal Protection claim lacked merit.

Herschfus appeals these rulings.

## II.

A district court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review summary-judgment decisions de novo, drawing all reasonable factual inferences for the nonmoving party. *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. Educ.*, 1 F.4th 436, 445 (6th Cir. 2021). And we may affirm on any ground supported by the record. *Id.* at 451.

## III.

We begin with standing. To invoke the power of the federal courts, the plaintiff must have a personal stake in the case. He must show that he suffered (or will imminently suffer) an injury, traceable to the defendant, that judicial relief could redress. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Without these elements, the court has no case or controversy to resolve, and thus no jurisdiction under Article III. The parties' standing dispute in this case involves the injury prong.

Herschfus presses what is essentially an unconstitutional-conditions claim: The City, he insists, has unfairly demanded his consent to warrantless searches before it will give him a license. The unconstitutional-conditions doctrine limits the government's ability to deny a person public benefits to coerce him into waiving his constitutional rights. *See Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911 (6th Cir. 2019) (en banc). So it matters little whether Oak Park in fact searched Herschfus's property without a warrant or consent; his claim attacks the licensing conditions.

Herschfus has standing to challenge the city's licensing scheme on an unconstitutional-conditions basis. When a person refuses to give up a constitutional right and forfeits a government benefit as a result, the allegedly unlawful denial of the benefit "is a constitutionally cognizable injury." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013).

Herschfus alleges that Oak Park has denied him a landlord license only because he wouldn't waive his Fourth Amendment rights and insisted that the city get a warrant before inspecting his property. That qualifies as an injury. *See Benjamin v. Stemple*, 915 F.3d 1066, 1068 (6th Cir. 2019) (noting that a Fourth Amendment unconstitutional-conditions "argument works, or at least begins to work," when "the required consent surrenders cognizable Fourth Amendment rights").

The Ninth Circuit's decision in *Stavrianoudakis v. U.S. Fish & Wildlife Service*, 108 F.4th 1128 (9th Cir. 2024), illustrates this point well. A group of falconers challenged state and federal regulations that required them to submit to unscheduled, warrantless inspections as a condition of obtaining a falconry license. *Id.* at 1133–34, 1136. The district court dismissed the Fourth Amendment claims for lack of standing, reasoning that the falconers had suffered no injury because they'd never been subjected to unannounced searches under the rules. *Id.* at 1135. But the Ninth Circuit reversed. The falconers' injury, the court ruled, was "the forced choice: retention of their Fourth Amendment rights or receipt of a falconry license, which is required to lawfully practice falconry." *Id.* at 1138. And the falconers suffered this injury each time they sought to get new licenses, "whether or not they [were] actually subjected to any unlawful inspections." *Id.* (citing *Koontz*, 570 U.S. at 606). *Stavrianoudakis* looks just like our case. Like the falconers, Herschfus faces a choice—give consent or be denied a license. So like the falconers, Herschfus has standing.

What's more, Herschfus has incurred around a thousand dollars in fines for renting without a license. He thus has a classic pocketbook harm. *See United States v. Texas*, 599 U.S. 670, 676 (2023) ("Monetary costs are of course an injury."); *Boniecki v. City of Warren*, No. 23-2025, 2024 WL 3311410, at *2 (6th Cir. July 1, 2024) (order) (landlord's fine for renting without a license gave him standing to challenge housing code). Herschfus's civil-infraction tally also continues to grow, and he faces misdemeanor charges as a repeat offender. So money isn't the only thing on the line.

Oak Park responds by pointing to *Vonderhaar v. Village of Evendale*, 906 F.3d 397 (6th Cir. 2018). In *Vonderhaar*, we held that a landlord lacked standing to challenge his town's housing code because he had suffered no injury. *Id.* at 401–02. The town had conducted no unlawful searches in the past, and there was no "certainly impending risk" that the town was

going to conduct any unlawful searches in the near future. *Id.* at 401 (internal quotation marks omitted).

*Vonderhaar* differs meaningfully from our case. *Vonderhaar* centered around the presence (or absence) of past and future searches. The claimed injury involved actual (or imminent) real-life, physical intrusions on property by the government. By contrast, Herschfus's injury is not any past or threatened unlawful search. In an unconstitutional-conditions case like this one, the injury is instead "the forced choice" between giving consent or forgoing a landlord license. *Stavrianoudakis*, 108 F.4th at 1138. Framed slightly differently, once Herschfus has actually withheld consent the injury is the allegedly "impermissible denial of a governmental benefit." *Koontz*, 570 U.S. at 607. *Vonderhaar* did not address standing for an unconstitutional-conditions claim like this one, so it does not tell us how to resolve our case.

Oak Park also relies on *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545 (6th Cir. 2003), which involved a homeowner who rented out his basement as a separate dwelling. We ruled that the homeowner lacked standing to sue the police for searching the basement because he had no reasonable expectation of privacy in the basement occupied by tenants. *Id.* This case doesn't do the city much good, either. We've noted before that *Shamaeizadeh* speaks to a landlord's standing to contest a *particular search*; it doesn't speak to standing to contest a rental-property ordinance and the conditions that accompany a license. *See Halpern 2012, LLC v. City of Ctr. Line*, 806 F. App'x 390, 393 n.3 (6th Cir. 2020). Since Herschfus's case falls in the latter camp, *Shamaeizadeh* doesn't apply.

Because Oak Park asks Herschfus to "surrender[] cognizable Fourth Amendment rights" in return for licensing him, *Benjamin*, 915 F.3d at 1068, he has standing to challenge the licensing conditions. (Indeed, we've held before that a landlord in Herschfus's situation not only had standing but could also state a plausible claim to relief. *See Boniecki*, 2024 WL 3311410, at *2.)

At standing doctrine's core, we ask the plaintiff: "What's it to you?" Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). Herschfus still hasn't secured a license and faces mounting fines. And a

favorable ruling against these defendants could fix his problems.  This case is worth plenty to him.

## IV.

We now consider the merits of the Fourth Amendment argument.**[5]**  On the merits, it does not succeed.

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  "Reasonableness is the key, the existence of a warrant often its measure." *Benjamin*, 915 F.3d at 1069.  Warrantless searches are presumptively unreasonable. *Id.*  But that rule comes with several well-known exceptions, like consent or exigent circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Kentucky v. King*, 563 U.S. 452, 460 (2011).

One of these exceptions applies when a search's "primary purpose" is "[d]istinguishable from the general interest in crime control" and requiring a warrant with probable cause would be impracticable. *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (alteration in original). This exception includes "administrative searches designed to assure compliance with building

---

**[5]**As discussed above, we will address the merits—even though the district found that Herschfus lacked standing—because the district court effectively gave a Fourth Amendment merits ruling in the section of its opinion on procedural due process.  The parties have also briefed and argued the Fourth Amendment merits, and we may affirm on any ground the record supports.

We do not think that the district court intentionally ruled that Herschfus lacked standing for a claim but lost on the merits anyway.  The complaint doesn't read cleanly; it spreads various Fourth Amendment, Fifth Amendment, and Fourteenth Amendment charges across several counts, which seem in part to merge together.  Still, both parties interpret the court's opinion as ruling on standing and the merits of the same Fourth Amendment issue, and they dispute whether that was proper.  So to settle the matter, we clarify the following point.

A court cannot rule on a claim's merits after deciding that the plaintiff lacks standing.  "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).  No standing means no case or controversy; no case or controversy means no jurisdiction; and a court without jurisdiction cannot offer advice on what the law says.  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–102 (1998).  We don't question the general practice of providing alternative merits holdings, but giving dispositive jurisdictional and nonjurisdictional holdings exceeds the Article III authority given to the federal courts.

(Unlike the district court, we think Herschfus does have standing.  So we can address the merits, which, again, the parties have briefed.)

codes." *Benjamin*, 915 F.3d at 1069 (citing *Patel*, 576 U.S. at 420–21).  City inspectors can still get an administrative warrant, of course; the probable-cause standard is modified, and an inspector "need only make a lesser showing that a search is in accord with 'reasonable legislative or administrative standards.'"  *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 538 (1967)).  But the Fourth Amendment permits the government to require warrantless inspections so long as it provides the subject of the search some "opportunity to obtain precompliance review before a neutral decisionmaker."  *Patel*, 576 U.S. at 420.  Finally, consent and exigent circumstances permit warrantless administrative searches, too, no less than warrantless police searches.  *See id.*; *Gardner v. Evans*, 920 F.3d 1038, 1056 (6th Cir. 2019).

Oak Park wants to perform licensing inspections but doesn't want to seek a warrant or impose a mandate that would require the opportunity for precompliance review.  The city doesn't invoke exigent circumstances, either.  That leaves consent.  Oak Park wants to make its licensing inspections lawful by securing permission; it has no plans to barge into Herschfus's properties over his objections.[6]  But it has asked him to authorize an initial inspection as a condition of receiving a landlord license.  It is this choice—between consenting to an inspection or forgoing a license—that Herschfus protests.  So we have an unconstitutional-conditions case.

The unconstitutional-conditions doctrine, familiar from takings and free-speech cases, among others, seeks to protect the exercise of constitutional rights from regulatory strings attached to government benefits.  *See Koontz*, 570 U.S. at 599, 604 (takings, and collecting cases); *e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 59–60 (2006) (free speech).  As a general matter, the government can choose to offer or not offer public benefits or privileges as it sees fit (public funds, public employment, a license, etc.), and it can condition the receipt of these benefits "on compliance with certain obligations."  *Hodges*, 917 F.3d at 911.  From time to time, though, the government asks for too much and poses an

---

[6]If it did so without consent, a warrant, or a chance for precompliance review, of course, that could violate the Supreme Court's holdings in *Patel* and *Camara*.  *Camara* allowed an apartment resident to object to required housing inspections—for which refusing consent carried criminal liability—and ask for an administrative warrant. 387 U.S. at 531–39.  *Patel* similarly held that that hotel managers could object to required inspections of their books—for which refusing consent carried criminal liability.  The government had to afford them "an opportunity for precompliance review."  576 U.S. at 419.

unreasonable choice. When that happens, the unconstitutional-conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz*, 570 U.S. at 604.

The unconstitutional-conditions doctrine hasn't always provided a model of clarity, and the line between permissible and impermissible conditions is "famously opaque." Randy J. Kozel, *Leverage*, 62 B.C. L. Rev. 109, 111 (2021); *see also* Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415 (1989) (calling the caselaw "a minefield to be traversed gingerly"). Still, we have a few helpful markers. We know, for example, that the government can ask for a right to inspect your books as a condition of doing business with the government. *See Zap v. United States*, 328 U.S. 624, 628–29 (1946), *judgment vacated on other grounds by Zap v. United States*, 330 U.S. 800 (1947) (per curiam). Or it can ask certain employees to submit to drug testing as a condition of public employment or ask public-school student athletes to submit to drug testing as a condition of joining the team. *See Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 678–79 (1989); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 664–65 (1995). Or it can screen you as a condition of boarding an airplane or strolling into a courthouse. *See Chandler v. Miller*, 520 U.S. 305, 323 (1997). These conditions are reasonable, and there's always a realistic opt-out. If a traveler wants to avoid an airport security screening, for example, "he can avoid it by choosing not to travel by air." *United States v. Edwards*, 498 F.2d 496, 500 (2d Cir. 1974) (Friendly, J.).

The Supreme Court has also dealt with the unconstitutional-conditions framework in the administrative-search context. In *Wyman v. James*, the Court had to assess a welfare program for low-income families with children that conditioned the benefits on consent to periodic home visits by social workers. 400 U.S. 309, 310–16 (1971). When one mother repeatedly refused to permit home visits, New York terminated her benefits. The Court ruled that this program did not violate the Fourth Amendment; it did not "descend to the level of unreasonableness." *Id.* at 318. And the Court distinguished benefits with reasonable conditions from situations like those in *Camara* (or *Patel*), which involved mandated inspections with criminal liability for refusing to admit an inspector. *Id.* at 324–25. The better comparison, the Court suggested, was to an IRS agent auditing a person's tax return. *Id.* at 324. If an agent can ask to inspect the person's

paperwork to confirm his eligibility for a deduction, then a social worker can conduct home visits as a condition of financial aid. In both cases, telling the government "no" doesn't violate the law. It just results in the cessation of aid. That, the Court found, was reasonable.

The basic ask of the Fourth Amendment is always reasonableness, *Benjamin*, 915 F.3d at 1069, for analyzing conditions just as much as actual, physical searches. We simply ask whether a proposed search is reasonable as a condition of a discretionary benefit or privilege. *See Wyman*, 400 U.S. at 318 ("It is []reasonableness which is the Fourth Amendment's standard.").

Precedents like *Wyman* resolve this case: Oak Park's licensing regime does not impose an unreasonable or unconstitutional condition. We agree with courts that have found this kind of scheme analogous to home visits by social workers or security screening at airports—it "pass[es] constitutional muster based on the fact that it requires a limited search by a city official for the specific purpose of receiving a benefit under the law." *Marcavage v. Borough of Lansdowne*, 493 F. App'x 301, 306 (3d Cir. 2012) (unsuccessful landlord challenge to inspection condition for license). Even on the same day as it decided *Camara*, the Supreme Court noted that it did not "question such accepted regulatory techniques as licensing programs which require inspections prior to operating a business or marketing a product." *See v. City of Seattle*, 387 U.S. 541, 546 (1967); *cf. Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161 (2021) ("[T]he government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking. . . . When the government conditions the grant of a benefit such as a permit, license, or registration on allowing access for reasonable health and safety inspections," the constitutional-conditions test is satisfied.)

Several factors analyzed in *Wyman* support this conclusion. First, *Wyman* explained that the home visit aimed to ensure the wellbeing of the child, whom the program primarily provided for, and that the mother's rights shouldn't stand in the way. 400 U.S. at 318. Similarly, the goal of the rental inspections is to protect the tenants who will live there; the landlord has little interest in endangering them.

Second, *Wyman* noted that the burden imposed by the home visit was light. The social worker would try to schedule visits well ahead of time, and "[f]orcible entry or entry under false pretenses or visitation outside working hours" were prohibited. *Id.* at 321. So too here. Oak Park has no intention of surprising Herschfus at night or breaking down his door or sneaking through in disguise.

Third, *Wyman* observed that the social worker's visit "[was] not one by police or uniformed authority," and that the "home visit [was] not a criminal investigation . . . [nor] in aid of any criminal proceeding." *Id.* at 322–23. "The only consequence of [the mother's] refusal [was] that payment of benefits cease[d]." *Id.* at 325; *see also Marcavage*, 493 F. App'x at 306 ("At all times the [landlord] may refuse to consent to a search, at which point, no criminal sanctions attach and no search will take place."). Again, we see the same thing here. A housing inspector is not a police officer or FBI agent; he does not conduct criminal investigations; and the only consequence of refusing to permit an inspection is the denial of a license, not criminal liability.

True, Herschfus faces a misdemeanor charge—but for renting to tenants without a license as a repeat offender, not for withholding consent to an inspection. He faces no arrest or criminal charges for saying "no," as the property owners did in *Camara* and *Patel*. The codes in those cases required an inspection, point blank; the property owners had no choice. So while Herschfus's misdemeanor charge helps him with standing, it doesn't make this case like *Camara* or *Patel* on the merits. *Compare Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 111 (2d Cir. 2025) (distinguishing *Patel* because "a civil penalty" of several hundred dollars "does not approach the coercive power of criminal liability"), *with Liberty Coins*, 880 F.3d at 282 (finding a code indistinguishable from *Patel*'s because it provided for criminal penalties). If the mother in *Wyman* had begun pilfering welfare benefits from the state after it cut her off, she might've incurred criminal liability, too—but for taking something she wasn't entitled to, not for refusing a social worker's visit.

Oak Park's licensing regime does not violate the Fourth Amendment.[7]

## V.

Finally, we consider the Equal Protection claim. Herschfus maintains that the housing code impermissibly discriminates against landlords of one- and two-family rentals, leaving owner-occupied homes and larger multi-unit rentals less regulated.

Under the Equal Protection Clause, courts closely scrutinize suspect classifications—race, national origin, alienage, and sex—which we subject to heightened review. *See United States v. Skrmetti*, 145 S. Ct. 1816, 1828 (2025). But other classifications must pass only rational-basis review, the easiest test known to the law. For nonsuspect classes, "we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.* (internal quotation marks omitted). The classification of one- and two-family rental units is drawn with no suspect lines and thus needs only some rational basis.

It has one. The city code singles out one- and two-family homes over larger apartment buildings for inspections because *state* law already requires similar inspections for those buildings. *See* Mich. Comp. Laws §§ 125.401, 125.529. The city code thus brings smaller homes into parity, not disparity, with the larger buildings. And Oak Park singles out rentals over owner-occupied homes because, in the city's experience, owners who live in their houses take better care of them than renters do. *See Harris v. Akron Dep't of Pub. Health*, 10 F. App'x 316, 320 (6th Cir. 2001) (order) (noting that rental units may have more housing-code violations than owner-occupied homes).

---

[7]While this appeal was pending, Herschfus moved to supplement the record with evidence of the following: new tickets he'd received, state-court proceedings on his fines and misdemeanor charge, and an inspection inside his rentals, requested by the tenant. *See* App. Dkt. 23; *see also supra* n.3. Herschfus asks us to take judicial notice of these items, even though the record on appeal consists of materials filed in the district court. Fed. R. App. P. 10(a).

We deny the motion as moot. Herschfus has standing without it, and his claims would lack merit even if we granted it.

This classification "bears a rational relation" to the legitimate ends of public health and safety. *Skrmetti*, 145 S. Ct. at 1828 (internal quotation marks omitted). It's "neither arbitrary nor irrational." *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 406 (6th Cir. 1999). So it's constitutional.

## VI.

For these reasons, we affirm.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the judgment in this case. Although I agree with the majority's decision on the merits, I am, however, inclined to agree with Judge Stephen J. Murphy's well-reasoned decision on standing: Herschfus does not have standing to bring a Fourth Amendment unconstitutional-conditions claim. *Herschfus v. City of Oak Park*, 718 F. Supp. 3d 707, 713–14 (E.D. Mich. 2024). I also see this case as on all fours with *Vonderhaar v. Village of Evendale*, 906 F.3d 397 (6th Cir. 2018). *Vonderhaar* held that a plaintiff has no standing to bring a facial or as-applied challenge against a building-inspection code where the plaintiff "ha[s] not suffered an actual injury and do[es] not have a 'certainly impending' risk" that the municipality "will conduct a warrantless search of one of their properties." *Id.* at 401–02. For standing, "[w]hat matters is whether the commissioner has conducted a warrantless inspection in violation of the Fourth Amendment (he has not) or whether he is likely to do so in the future (he is not)." *Id.* at 402. Just like the code challenged in *Vonderhaar*, the Oak Park code does not permit unreasonable warrantless searches. For these reasons, we are bound by *Vonderhaar*. I would affirm the district court opinion in full.