NOT RECOMMENDED FOR PUBLICATION

File Name: 25a0530n.06

Case No. 25-1313

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Nov 19, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| KEVIN R. LAMB | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| SCOTT CROFOOT and TOWNSHIP OF | ) | |
| JONESFIELD, | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

THAPAR, Circuit Judge. Kevin Lamb wanted to build a greenhouse in his front yard. Unfortunately, that project violated local zoning ordinances. So inspector Scott Crofoot entered Lamb's property and put up a stop work order. Lamb believes Crofoot's actions violated the Constitution and Michigan law. They did not.

I.

A few years ago, Kevin Lamb began constructing a vegetable greenhouse in the front yard of his house in Jonesfield Township, near the intersection of two roads. Scott Crofoot, an inspector for the Township, received a complaint about the construction and determined that Lamb hadn't received a construction permit. So he drove to Lamb's home and walked onto the property to

inspect the greenhouse. After entering, Crofoot met Lamb's adult daughter and her boyfriend and told them the construction needed to stop.

While Crofoot was waiting in his driveway, Lamb came out of his house and demanded that Crofoot leave. Lamb told Crofoot to send him any concerns about the greenhouse in writing. In response, Crofoot pulled out a business card and dropped it on the ground by Lamb. Crofoot then returned to his car and drove partially onto Lamb's yard. He wrote up a "stop work" order and attempted to post it to the greenhouse, although the order fell to the ground. After that, Crofoot drove away and called the police. Thereafter, he met with a police officer whose body camera recorded their conversation. During the conversation, he told the police that Lamb had assaulted him by "chest-butt[ing]" him, but Lamb denies that. R. 12, Pg. ID 98–99.

Four days later, Crofoot mailed a "Notice of Violation and Order" to Lamb, commanding him to correct the alleged violations before reinspection in one month. *Id.*, Pg. ID 99. The notice identified multiple violations of the Township's zoning ordinances, including that the greenhouse was being built in the street's right-of-way, an allegation which Lamb also denies. So Lamb dismantled the greenhouse. Afterward, Lamb was arrested and charged with felony assault for allegedly pushing Crofoot. The Saginaw County prosecutor's office dismissed those charges but re-issued them after Lamb brought this suit.

Based on these events, Lamb sued Crofoot and Jonesfield Township in the United States District Court for the Eastern District of Michigan. He brought two section 1983 claims against both Crofoot and Jonesfield Township, alleging violations of his Fourteenth and Fourth Amendment rights. 42 U.S.C. § 1983. Lamb brought those claims against Crofoot in his individual capacity, alleging that Crofoot violated those rights by entering his land and posting the stop work order. And he brought the same claims against Jonesfield Township, alleging that

Crofoot committed those violations under a policy or practice of the Township. Lamb also brought a state-law trespass claim against both defendants and challenged the Township's zoning ordinance as violating the Fourth Amendment.

The district court granted defendants' motion to dismiss for failure to state a claim. It found that Lamb had failed to allege a protected property interest in building a greenhouse in violation of municipal zoning requirements, so his Fourteenth Amendment claim failed. The district court similarly rejected Lamb's Fourth Amendment claim because Crofoot's entry onto his land to post a stop work order wasn't a search or a seizure. And because there was no constitutional violation, the court rejected Lamb's claim against the Township. The court also threw out Lamb's challenge to the zoning ordinance. It found Lamb's as-applied challenge failed because Crofoot's past actions were constitutional, and it held Lamb lacked standing to bring a facial challenge. Finally, the court declined to exercise supplemental jurisdiction over Lamb's state-law trespass claims. And it dismissed Lamb's complaint with prejudice.

We review a district court's grant of a motion to dismiss de novo and can affirm on any ground supported by the record. *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 678 (6th Cir. 2017). At this stage, we accept Lamb's well-pleaded factual allegations as true. *Id.*

II.

To succeed on his section 1983 claims, Lamb must show that Crofoot deprived him of "rights, privileges, or immunities secured by the Constitution and laws" while acting under "color of" state law. 42 U.S.C. § 1983. Because Crofoot is a municipal official, he enjoys qualified immunity. *See District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018). That means Lamb must also clear a two-step test to obtain damages: First, he must show that Crofoot violated his rights.

*Id.* at 62–63. Second, Lamb must show that precedent "clearly established" that Crofoot's actions violated the Constitution. *Id.* at 63.

Lamb's claims fail at the first step. He argues his Fourteenth and Fourth Amendment rights were violated. But Lamb didn't have a property interest in building the greenhouse, so Crofoot didn't violate his Fourteenth Amendment rights by ordering him to stop work. And Crofoot's actions didn't constitute a seizure, which is the only Fourth Amendment argument Lamb raises on appeal.

A.

First, Lamb argues that Crofoot's stop work order violated his Fourteenth Amendment procedural due process rights. To succeed on a procedural due process claim, a plaintiff must show that (1) he has a life, liberty, or property interest protected by the Fourteenth Amendment, (2) he was deprived of that interest, and (3) he was not afforded sufficient process before the deprivation. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Those first two steps are critical: Lamb must point to some lost property interest before we consider the adequacy of the process he received.

So what property was Lamb deprived of? He doesn't identify any tangible property—like Crofoot hauling away his car. Instead, Lamb contends that he had a right to build a greenhouse on his land, and Crofoot deprived him of this interest when he posted the stop work order.

But Lamb has no property interest in building a greenhouse in his yard. To have a property interest, a plaintiff must possess a "legitimate claim of entitlement to it," not just "a unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). That entitlement must arise from an "independent source such as state law." *Id.* True, state law can't abrogate traditional interests in property. *Cf. Tyler v. Hennepin County*, 143 S. Ct. 1369, 1375 (2023). But

a valid zoning ordinance can nevertheless inform the scope of an individual's property interest in a particular use of land. *See White Oak Prop. Dev., LLC v. Washington Township*, 606 F.3d 842, 853 (6th Cir. 2010). Lamb doesn't argue that the zoning ordinance at issue invades any traditional property interest. The parties instead focus on whether the ordinance is valid under Michigan law and thus a relevant restriction on Lamb's use of the property in the first place.

Here, the Township's ordinance is clear. Section 306(1)(a) prohibits constructing "accessory building[s]" in "front yard[s]." Jonesfield Twp., Mich., Zoning Ordinance, § 306(1)(a). Greenhouses count as accessory buildings under the ordinance. *Id.* § 202(4). And the ordinance defines "[f]ront yard" as "[a] yard extending across the full width of the lot." *Id.* § 202(192)(b). Lamb tried to construct an accessory building (his greenhouse) in a corner of a yard that extends across the full width of the lot (his front yard). That construction thus violated the Township's ordinance, and Lamb had no property interest in using his land to construct a greenhouse.

Lamb seems to acknowledge this reading of the Township's ordinance. But he claims that Michigan's Right to Farm Act (RTFA) preempts the local zoning ordinance governing greenhouses. Mich. Comp. Laws §§ 286.473(1), 286.474(6). He is wrong. It's true that the RTFA supersedes any local zoning ordinance "to the extent that it would prohibit conduct protected by the" Act. *Charter Township of Shelby v. Papesh*, 704 N.W.2d 92, 103 (Mich. Ct. App. 2005); *accord Township of Fraser v. Haney*, No. 368834, 2025 Mich. App. LEXIS 6358, *7 (Mich. Ct. App. July 9, 2025). But what protection does the RTFA give? As relevant here, it says only that a "farm or farm operation shall not be found to be a public or private nuisance if" the activities comply with generally accepted farming standards. Mich. Comp. Laws §§ 286.473(1), 286.474(6). As the Michigan Supreme Court has made clear, this protection from nuisance suits doesn't exempt Lamb from zoning ordinances governing the *location* of greenhouses.

*Papadelis v. City of Troy*, 733 N.W.2d 397, 398 (Mich. 2007) ("[N]o provisions of the RTFA or any published generally accepted agricultural and management practice address the . . . location of buildings used for greenhouse[s].").  Generally accepted farming standards still don't cover greenhouse locations today.  Michigan Department of Agriculture and Rural Development, *GAAMPs*, https://perma.cc/6FL2-XT4H (last visited Oct. 24, 2025).  And since the RTFA doesn't preempt the Township's ordinances, those ordinances govern whether Lamb can build a greenhouse in his front yard.  So Lamb was not deprived of a property interest, and there was no Fourteenth Amendment violation.

B.

Lamb also argues that Crofoot violated his Fourth Amendment rights.  He admits that Crofoot's original entry onto his property was a permissible "knock and talk."  *See Smith v. City of Wyoming*, 821 F.3d 697, 713 (6th Cir. 2016).  But, in Lamb's telling, Crofoot violated the Fourth Amendment by driving back onto Lamb's property without a warrant and attempting to post the stop work order on the greenhouse after Lamb told him to leave.  Lamb argues this was an unreasonable seizure of his "private property being used to build his greenhouse" because it interfered with his "free use of private property."  Appellant Br. at 30.[1]

---

[1] Defendants ignore this argument entirely.  Crofoot contends that his actions couldn't have constituted a *search* under the Fourth Amendment because he merely conducted an administrative inspection, and Lamb had no reasonable expectation of privacy in the greenhouse.  But searches and seizures are distinct ways of violating the Fourth Amendment, so this argument doesn't respond to Lamb's seizure claim.  *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  Although that means Crofoot forfeited this argument, we still reach this question in the interest of judicial economy.  *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).  If Lamb's claims survive a motion to dismiss because of Crofoot's forfeiture, Crofoot would simply move for summary judgment on the seizure claim.  And because Lamb's seizure argument fails as a matter of law, the outcome would be the same at summary judgment as at a motion to dismiss.  What's more, the district court already rejected Lamb's seizure argument employing reasoning similar to our own.  So we save judicial resources by resolving this argument now.  *Cf. Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006).

The Fourth Amendment protects citizens' "persons, houses, papers, and effects" from "unreasonable searches and seizures." U.S. Const. amend. IV. Seizures of property occur "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). That usually means the official must "tak[e] possession" of the property. *F.P. Dev., LLC v. Charter Township of Canton*, 16 F.4th 198, 208 (6th Cir. 2021) (quoting *Torres v. Madrid*, 592 U.S. 306, 312 (2021)). And if an official takes possession, the resulting seizure is generally unreasonable if the official doesn't have a warrant. *United States v. Place*, 462 U.S. 696, 701 (1983).

Under this rule, Crofoot didn't seize Lamb's property. There are two ways to construe Lamb's argument regarding *what* Crofoot allegedly seized. Both fail. First, his argument could suggest that Crofoot seized his *land* by stopping him from building a greenhouse. But the Fourth Amendment doesn't include land in its text—"persons, houses, [or] papers." U.S. Const. amend. IV. And this court has concluded that it is not an "effect" either. *F.P. Dev.*, 16 F.4th at 208 (citing *Oliver v. United States*, 466 U.S. 170, 177 n.7 (1984) ("The Framers would have understood the term 'effects' to be limited to personal, rather than real, property.")). Thus, the Fourth Amendment doesn't protect land from seizures.[2]

Even if Lamb instead contends that Crofoot seized the *greenhouse*, his argument would still fail. While the stop work order apprised Lamb that the construction violated the Township's ordinances, it didn't meaningfully interfere with his possession of his property. That's because Lamb kept possession of the partially built greenhouse even after Crofoot posted the stop work

---

[2] That is not to say the government can take one's land without consequence. Usually, that's considered a taking. But Lamb doesn't argue that Crofoot's conduct amounted to a taking—regulatory or otherwise. So we need not decide that question, and this analysis doesn't implicate whether those actions or the Township's policies would support a valid Fifth Amendment claim.

order—the greenhouse remained on his front yard. And Lamb retained possession of the material used to construct the greenhouse after taking it apart. In short, Crofoot never seized the greenhouse or any part of it.

This finding is consistent with our holding in *F.P. Development*. 16 F.4th at 208. There, a county official posted a stop work order on the plaintiff company's land advising it not to remove certain trees in violation of local ordinances. *Id.* at 202. The company sued and argued that the township's ordinance authorized an unreasonable seizure. *Id.* at 201, 208. We disagreed. The "standing trees" that remained on the plaintiff's land were real property not subject to the Fourth Amendment. *Id.* at 208. And the plaintiff retained full control over the trees it removed from its property, so the county had not seized them. *Id.* The same is true here.

In response, Lamb points to *Soldal v. Cook County*, where the Supreme Court found that officials had committed a seizure after they tore a mobile home from its foundations and towed it away. 506 U.S. 56, 58 (1992). But there was a seizure in *Soldal* because the government took the property away. Thus, the property owner lost possession of his mobile home, whereas Lamb kept possession of his greenhouse. Far from towing it away, Crofoot left the greenhouse where he found it, and Lamb himself later dismantled it.

Because Lamb only argues on appeal that Crofoot seized his property, we need not consider whether his intrusion constituted an unlawful search. And because Lamb retained full possession of the greenhouse, Crofoot didn't commit a seizure in violation of Lamb's Fourth Amendment rights.

## C.

Lamb brings his Fourth and Fourteenth Amendment claims against Jonesfield Township in addition to Crofoot. But to make out such a claim against a municipality like the Township, a

plaintiff must allege that officials violated his rights pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). As discussed above, Lamb hasn't shown that his Fourteenth or Fourth Amendment rights were ever violated. So regardless of whether a policy or custom exists, these claims against the Township fail.

## III.

## A.

Hoping to stop inspectors from coming onto his land in the future, Lamb also brings a pre-enforcement challenge to section 901(1)(D) of the Jonesfield Township Zoning Ordinance. This ordinance authorizes officials "to make inspections of any building or parcel as necessary to enforce this Ordinance." Jonesfield Twp., Mich., Zoning Ordinance § 901(1)(D). Because that language doesn't include any warrant requirement or lay out an administrative procedure to challenge inspections, Lamb argues that it authorizes unlawful inspections. And Lamb believes he has standing to bring both a facial and an as-applied challenge to the ordinance because Crofoot threatened to inspect his property without a warrant. Specifically, Lamb points to a letter he received from Crofoot saying that he would return for a reinspection on or around November 28, 2023.

But Lamb lacks standing to challenge section 901(1)(D). To have standing a plaintiff must show three things: (1) an injury-in-fact that is (2) traceable to the defendant's actions and (3) likely to be redressed by a favorable court decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And to establish an injury-in-fact, not just any alleged harm will do. The injury must be "concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). These standing requirements ensure the plaintiff has a personal stake in the outcome of the case, and they apply regardless of whether Lamb's challenge is facial or as-applied. *See id.*;

*Miller v. City of Wickliffe*, 852 F.3d 497, 502 (6th Cir. 2017). Lamb fails at the first prong of *Lujan*'s test because his claimed harm is neither actual nor imminent.

Lamb alleges no "actual" harm that allows a pre-enforcement suit. In the pre-enforcement context, only ongoing harms count as actual. *See Clark v. Stone*, 998 F.3d 287, 294 (6th Cir. 2021). Past harms that are not ongoing do not qualify. *See id.*; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). So even if Lamb alleged that Crofoot had inspected him under section 901(1)(D) in the past, that wouldn't be an actual harm giving Lamb standing to bring a pre-enforcement suit. And Lamb hasn't pointed to any ongoing harm caused by that provision. He claims that he has been "chilled" from rebuilding a greenhouse because of his fear of being inspected without a warrant. That theory fails several times over.

To start, Lamb's allegations are nowhere in his complaint. He waited until his opening brief to allege any intention to rebuild. And he waited until his reply brief to claim he has been "chilled" by fear of reinspection. In this posture, we "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). So we cannot rule for Lamb using his "new allegations (or evidence) not contained in the complaint." *Id.*

That problem aside, Lamb's "chilling" theory also lacks causation and redressability. It's not plausible that Lamb is declining to build a greenhouse out of fear he will be subject to a warrantless inspection. After all, he had to take apart his greenhouse because it violated the Township's zoning ordinance. So an allegedly unlawful inspection under section 901(1)(D) isn't *causing* him not to construct. And it's hard to see how any chilling effect would be redressable by a ruling on section 901(1)(D)'s scope, since Lamb's zoning-rule problem would remain.

Regardless of these issues, we haven't recognized subjective "chill" as an injury-in-fact in the Fourth Amendment context. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013)

(finding that "self-inflicted injuries" don't support standing). Lamb's un-pled theory gives no reason to chart a different path.

Lamb has also failed to show an "imminent" harm. The imminence requirement demands at least a "substantial risk" that the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 414 n.5). There is no substantial risk that Lamb will be subject to an unlawful warrantless search. While Crofoot's letter threatened to conduct an inspection on or around November 28, 2023, that inspection never happened. And now there isn't even any greenhouse to inspect—Lamb dismantled it. Lamb doesn't identify any other structures on his property that Crofoot, or anyone else in the Township, has threatened to inspect.

Even if we considered Lamb's late-stated claim that he wants to "promptly rebuild" the greenhouse and worries about an unlawful inspection, he runs into additional problems. Reply Br. at 11. Injuries that are "highly speculative" and depend on "a highly attenuated chain of possibilities" are not imminent. *Clapper*, 568 U.S. at 410. Lamb's injury requires a speculative chain of causation: Lamb would need to rebuild the greenhouse, Crofoot would need to decide to inspect it again, that inspection would have to amount to a "search" under the Fourth Amendment, and it would need to be conducted without either a chance for pre-compliance review or a warrant. *Cf. id.* That first step is itself highly speculative—Lamb provides no concrete plans beyond a desire to "promptly" rebuild.

The same goes for Lamb's concern that Crofoot would then inspect his greenhouse in violation of the Fourth Amendment. For one, a search may never occur. Lamb's greenhouse is in his front yard. *Supra* page 5. While Crofoot's letter said he would reinspect the property, that could be done via a quick visual inspection from the public road to see whether the greenhouse is

still standing. *See Allinder v. State of Ohio*, 808 F.2d 1180, 1184–85 (6th Cir. 1987). That would not be a search. *Id.*

But even if a search were to occur, we don't know whether it would violate the Fourth Amendment. Municipalities can comply with the Fourth Amendment by setting out a valid administrative search regime or by procuring a warrant. *See Benjamin v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019) (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015)). Jonesfield Township's ordinances might constitute a valid administrative search regime. For a search regime to be valid, municipalities must provide "precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420. Jonesfield's ordinances seem to provide that review by giving "any aggrieved person" the chance to appeal any decision or action by the Zoning Administrator. Jonesfield Twp., Mich., Zoning Ordinance § 903(2)(A). In this case, for example, Lamb could have appealed Crofoot's threatened re-inspection to the Zoning Board of Appeals because the threatened inspection likely qualified as an appealable "Zoning Administrator's Decision." Jonesfield Twp., Mich., Zoning Ordinance § 909 (Zoning Ordinance Actions Table). That would have given Lamb a public hearing and thus the required "precompliance review." To be sure, it's unclear whether Jonesfield regularly sends pre-inspection notices like the one Lamb received. But that just underscores that Lamb's present claim is too speculative.

Lamb's worry that Crofoot would return without a warrant is also speculative. While section 901(1)(D) doesn't expressly require a warrant to conduct an inspection, it doesn't forbid getting one either. Instead, the provision just gives inspectors the *authority* to conduct inspections, and that authority is still constrained by the Fourth Amendment. Inspectors are presumed to follow the law, and Lamb can't point to a history of constitutional violations because Crofoot didn't violate Lamb's Fourth Amendment rights on his previous inspection. *See O'Shea v. Littleton*, 414

U.S. 488, 497 (1974); *Driehaus*, 573 U.S. at 165. So it's speculative that a Township inspector would violate Lamb's Fourth Amendment rights under section 901(1)(D), even if Lamb does rebuild the greenhouse.

Together, this chain of uncertain events means there is no "substantial risk" that Lamb will experience a Fourth Amendment violation. *See Driehaus*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 n.5). Thus, he has not shown an imminent injury. And because Lamb has not established an actual injury either, he lacks standing to challenge the Township's ordinance. The district court correctly dismissed his claims.[3]

## B.

Lamb further argues that the district court erred by dismissing his challenges to section 901(1)(D) with prejudice. He is correct. A dismissal with prejudice acts as a ruling on the merits, and a federal court cannot decide the merits of a claim when it lacks jurisdiction. *See Jackson v. City of Cleveland*, 925 F.3d 793, 809 (6th Cir. 2019). Because Lamb lacked standing to challenge that provision, the district court didn't have jurisdiction over that claim.

Accordingly, the district court should have dismissed Lamb's challenges to section 901(1)(D) without prejudice. And if Lamb can establish standing, he can bring his facial and as-applied claims again.

## IV.

Similarly, the district court declined to exercise supplemental jurisdiction over Lamb's state-law trespass claim. Thus, as with the section 901(1)(D) claim, this claim must be dismissed

---

[3] The district court rejected Lamb's as-applied challenge because he did not allege a past or present injury. But "past, present, or *future*" injury suffices for actual harm for an as-applied challenge. *Vonderhaar v. Village of Evendale*, 906 F.3d 397, 400–01 (6th Cir. 2018) (emphasis added). The district court should have analyzed the absence of future injury when dismissing Lamb's as-applied challenge, not just his facial challenge.

without prejudice. *See Vandiver v. Hardin Cnty. Bd. of Educ.*, 925 F.2d 927, 935 (6th Cir. 1991). So Lamb remains free to litigate his trespass claim in state court.

V.

Finally, Lamb argues that the district court erred by declining to consider body camera footage of Crofoot's statements to the police after Lamb allegedly assaulted him. He contends that those statements undermine Crofoot's justification for entering his property and issuing the stop work order. But district courts should not consider video evidence at the motion-to-dismiss stage unless that evidence "blatantly contradict[s]" the complaint. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Far from contradicting his complaint, Lamb contends that the video *supports* his allegations. So the district court correctly declined to consider the body camera footage.

And in any event, the district court accepted as true Lamb's allegations that Crofoot had lied to police about the assault and that the greenhouse didn't interfere with a right-of-way. Considering the video evidence wouldn't have affected the court's ruling.

\* \* \*

Lamb can legally use his front yard for many different things. That includes landscaping, barbecues, and frisbee. But the Township's ordinance says he can't use it for greenhouse-building. Lamb's challenges to that restriction fail, and Crofoot's actions didn't violate Lamb's constitutional rights. We affirm in part, reverse in part, and remand to the district court with instructions to dismiss Lamb's state-law claim and his challenge to section 901(1)(D) of the ordinance without prejudice.